NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220454-U

NO. 4-22-0454

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ANDRE WOODS, | ) | No. 07CF661 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because defendant failed to make the showing of cause and prejudice required by section 122-1(f) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2020)), the circuit court was correct to deny him permission to file a successive petition for postconviction relief.

¶ 2   Defendant, Andre Woods, is serving sentences of imprisonment for armed robbery and other offenses. He moved for permission to file a successive petition for postconviction relief. The circuit court of McLean County denied the motion. Defendant appeals. The Office of the State Appellate Defender (appellate counsel) has moved for permission to withdraw from representing defendant in this appeal, because for reasons that appellate counsel explains in a supporting memorandum, he believes that any argument in support of this appeal would be frivolous. We notified defendant of his right to respond, by a certain date, to appellate counsel's motion. Defendant has not done so. After reviewing the record, we agree with appellate counsel's

assessment of the merits of this appeal. In our *de novo* review, we find that defendant has failed to make the showing of cause and prejudice necessary to receive permission to file a successive petition. Therefore, we grant appellate counsel's motion to withdraw, and we affirm the judgment.

¶ 3                                I. BACKGROUND

¶ 4        In July 2007, the State charged defendant with (1) four counts of armed robbery, a Class X felony (720 ILCS 5/18-2(a)(1), (b) (West 2006)); (2) four counts of aggravated robbery, a Class 1 felony (720 ILCS 5/18-5(a), (b) (West 2006)); (3) one count of resisting a peace officer, a Class 4 felony (720 ILCS 5/31-1(a-7) (West 2006)); (4) one count of obstruction of justice, a Class 4 felony (720 ILCS 5/31-4(a), (d)(1) (West 2006)); and (5) one count of aggravated battery, a Class 3 felony (720 ILCS 5/12-4(b)(8), (e)(1) (West 2006)).

¶ 5        The jury trial took place in August 2008. The evidence in the trial was essentially as follows. On June 23, 2007, Logan Fields, Brooke McBurney, Lisa Olson, Jennifer Keil, and Brandy Johnson were walking together in Bloomington, Illinois, when two men approached them. One of the men was brandishing a pistol, and the other man, defendant, was serving as a lookout. The man with the pistol demanded that Fields hand over his wallet. When Fields hesitated, he hit Fields in the face with the pistol. After Fields relinquished his wallet, the two men ordered his companions to hand over their purses. Defendant assisted with collecting the purses. When Keil protested the taking of her friends' purses, the man with the pistol struck her on the head with the pistol. Photographs admitted in evidence showed Keil's facial wounds and stitches. Because Keil fell on top of her purse, her purse was not taken. The two robbers fled with Fields's wallet and the other women's purses.

¶ 6        The police arrived, and several witnesses described the lookout as wearing a brown jumpsuit with a white stripe. A Bloomington police officer, William Buchanan, saw defendant

four blocks east of the reported robbery. Defendant was walking very quickly and was wearing a brown jumpsuit with a white stripe. Buchanan sped up to catch defendant, and defendant began running. Buchanan lost sight of defendant, and when Buchanan regained sight of him, he was being handcuffed by another Bloomington police officer, Justin Shively. Defendant physically resisted Shively. After a scuffle, defendant was handcuffed. Buchanan asked defendant what his name was. Defendant answered, falsely, that his name was Maurice Thomas.

¶ 7   Fields, McBurney, and two other eyewitnesses, Samantha and Allen Joyce, accompanied the police to a nearby parking lot, where defendant was being held, and identified defendant as one of the robbers. The man who wielded the pistol was never identified or apprehended.

¶ 8   Bloomington Police Officer Scott Mathewson found a pistol in the area where the police officers had chased defendant. The pistol turned out to be a BB gun, although it looked like a real handgun and had a weight similar to that of a real handgun. Mathewson testified he found no fingerprint evidence tying defendant to the gun and that although he had sent the pistol to be tested for deoxyribonucleic acid (DNA) evidence, he did not know the results of the test. According to other testimony, the police found the stolen purses and the wallet near the route on which police had chased defendant.

¶ 9   The jury found defendant guilty of all counts except counts IX and X, the armed-robbery and aggravated-robbery counts naming Keil as the victim. Pursuant to the one-act, one-crime doctrine (see *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996)), the circuit court vacated counts II, VI, and VIII, the aggravated-robbery convictions.

¶ 10   The circuit court imposed concurrent 60-year extended prison terms on each of the three armed-robbery convictions and two 6-year extended prison terms on the

obstruction-of-justice convictions. Also, the court imposed a 10-year extended prison term on the aggravated-battery conviction, to run consecutively to the 60-year prison terms already imposed. Thus, the sentences amounted to a total of 70 years' imprisonment.

¶ 11 Defendant took a direct appeal. He made two arguments, both of them having to do with the sentences. *People v. Woods*, No. 4-09-0134, slip order at 1-2 (Jan. 15, 2010) (unpublished order under Rule 23). First, he argued that the 60-year extended prison terms on the convictions of armed robbery reflected an underestimation of his rehabilitative potential. *Id.* Second, he argued that the extended prison terms on the remaining convictions were legally impermissible. *Id.* The appellate court found no abuse of discretion in the 60-year extended prison terms for the armed-robbery offenses. *Id.* at 9-10. Because defendant had been convicted, however, of multiple offenses of differing classes arising from a single course of conduct, the appellate court concluded that extended-term sentencing was authorized only for the offense within the most serious class, armed robbery. *Id.* at 10 (referencing *People v. Peacock*, 359 Ill. App. 3d 326, 337 (2005)). Therefore, the appellate court remanded the case with directions that the circuit court vacate the extended-term sentences other than those for armed robbery and that the court impose the maximum nonextended sentences of five years for aggravated battery, three years for obstruction of justice, and three years for resisting a peace officer. *Id.* at 10-11.

¶ 12 On February 18, 2011, defendant filed a petition for postconviction relief. This initial petition raised four claims: (1) trial counsel and appellate counsel rendered ineffective assistance by failing to argue that defendant was not proved guilty beyond a reasonable doubt, (2) trial counsel rendered ineffective assistance by failing to investigate DNA testing on the BB gun, (3) the police and the prosecutor concealed the favorable DNA results, and (4) trial counsel rendered ineffective assistance by advising defendant not to testify. The appointed postconviction

counsel moved to withdraw on the ground that he could think of no reasonable argument to make in support of the petition. The circuit court granted the motion and dismissed the petition. Defendant appealed, contending that postconviction counsel had failed to provide reasonable assistance. Disagreeing with that contention, the appellate court affirmed the judgment. *People v. Woods*, 2014 IL App (4th) 130191-U, ¶ 52.

¶ 13 On September 13, 2021, defendant moved for permission to file a successive petition for postconviction relief. See 725 ILCS 5/122-1(f) (West 2020). He proposed raising five claims.

¶ 14 First, according to defendant, he possessed newly discovered evidence that the prosecutor had "obstruct[ed] *** justice" and had "tamper[ed] with exculpatory evidence" by halting, "without court order," the DNA testing of the BB gun. Defendant submitted evidence receipts indicating that (1) on June 27, 2007, the Bloomington police department delivered to the forensic laboratory swabbing from the handle of the pistol and (2) on August 23, 2007, the laboratory returned the swabbing to the police department. On August 12, 2008, in the jury trial, Mathewson testified as follows on cross-examination by defense counsel:

"Q. Now, in addition to that, you apparently took a DNA swab from the handgun; correct?

A. Yes.

Q. And you sent that sample off to the Illinois State Police to have that analyzed; correct?

A. Yes, I did.

Q. And you have no idea what the result of that analysis is?

A. No, I do not.

Q. So, at this point, you're not able to provide or testify about any DNA evidence that ties [defendant] to this crime; is that fair to say?

A. Yes, that's fair."

¶ 15    Defendant's second proposed claim was that the prosecutor had "intentionally used false testimony by Det[ective] Mathewson"—namely, the testimony quoted above (although this was testimony elicited by defense counsel instead of by the prosecutor).

¶ 16    Third, defendant accused the prosecutor of lying to the jury by asserting, in his closing argument, that Keil had received stitches. In support of his claim that this assertion by the prosecutor was false, defendant relies on an incident summary report of June 23, 2007, in which Bloomington Police Officer Richard Beoletto wrote, "Bloomington Rescue provided [Keil] with a cloth and an ice pack to place on her cheek. I was advised that [Keil] had several small scrapes on her cheek as a result of being struck."

¶ 17    Fourth, defendant claimed that defense counsel had rendered ineffective assistance by "fail[ing] to investigate exculpatory lab evidence" "seen in [the evidence receipts]."

¶ 18    Fifth, defendant claimed that counsel on direct appeal rendered ineffective assistance by failing to raise these claims that defendant proposed raising in a successive petition.

¶ 19    On November 23, 2021, the circuit court denied the motion to file a successive petition for postconviction relief. Because the motion did not specifically raise either a cause-and-prejudice theory (see 725 ILCS 5/122-1(f) (West 2020)) or an actual-innocence theory (see *People v. Edwards*, 2012 IL 111711, ¶ 23), the court evaluated the motion under both theories. The court found the motion to be unmeritorious under both theories. Because defendant did in fact raise the DNA issue in his initial postconviction petition, he could not "demonstrate[ ] cause for his *** failure to bring the claim in his *** initial post-conviction proceedings." 725 ILCS

5/122-1(f) (West 2020). Also, the court pointed out, even if defendant's DNA were not on the BB pistol, that fact would have no tendency to exonerate defendant, considering that he was charged on a theory of accountability. See 720 ILCS 5/5-2(c) (West 2006). The evidence of guilt remained, in the court's assessment, overwhelming. Therefore, the court denied permission to file the proposed successive petition.

¶ 20　　　　　This appeal followed.

¶ 21　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　　In our *de novo* review (see *People v. Robinson*, 2020 IL 123849, ¶ 39), we agree with appellate counsel that this appeal is clearly devoid of merit. The DNA issue is unavailing for two reasons. First, defendant raised the DNA issue in his initial postconviction proceeding. In fact, the evidence receipts were exhibits to his initial postconviction petition. Thus, as appellate counsel correctly recognizes, the DNA issue is barred by the doctrine of *res judicata*. See *People v. Conway*, 2019 IL App (2d) 170196, ¶ 25 (reasoning that "[t]here can be no cause for failing to raise a claim in the initial proceeding when the claim was, in fact, raised"); *People v. Ames*, 2019 IL App (4th) 170569, ¶ 24 (holding that claims that have been raised previously cannot be raised in a successive petition).

¶ 23　　　　　Second, whether defendant personally handled the BB pistol is legally unimportant. As the circuit court instructed the jury, one of the elements the State had to prove to sustain the charge of armed robbery was that "the defendant *or one for whose conduct he is legally responsible* [knowingly took property from a person] *** by the use of force or by threatening the imminent use of force." (Emphasis added.) The court further instructed the jury that "[a] person is legally responsible for the conduct of another person when, *** during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly *** aids ***

- 7 -

or attempts to aid the other person in the *** commission of an offense." Defendant aided the person with the pistol in his commission of armed robbery by serving as a lookout and by collecting purses. In so doing, defendant effectively stepped into the shoes of the person with the gun. Regardless of whether defendant personally handled the pistol, the law regards him and the wielder of the pistol as equally guilty and makes no distinction between the two. See *People v. Brown*, 267 Ill. App. 3d 482, 487 (1994) (holding that "[a] defendant *** convicted on an accountability theory shares equal guilt with the principal perpetrator of the crime"). Therefore, it would have been frivolous of counsel on direct appeal to assert that defendant was innocent simply because his DNA was not found on the pistol. It is not ineffective assistance to refrain from making frivolous arguments. See *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 24        Our discussion thus far effectively disposes of all the proposed claims except for the proposed claim that the prosecutor lied by telling the jury that Keil had stitches. Defendant has not shown cause for failing to raise this claim in the initial postconviction proceeding. See 725 ILCS 5/122-1(f) (West 2020). Nor has he shown prejudice. That is to say, he has not "demonstrate[ed] that the claim not raised during his *** initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* He has not even demonstrated that the prosecutor's assertion was false. As defense counsel points out, the record contains a photograph of Keil's face, and in the photograph, she appears to have stitches.

¶ 25                                III. CONCLUSION

¶ 26        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 27        Affirmed.